# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

AVERY RAWLS                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 2:18-cv-141-KS-MTP

INSTITUTIONS OF HIGHER LEARNING,
UNIVERSITY OF SOUTHERN MISSISSIPPI,
NINA MCLAIN, in her official and individual
capacity, MARJORIE GEISZ-EVERSON,
in her official and individual
capacity                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause came before the Court on the Defendants' Motion for Summary Judgment [41]. Plaintiff has responded [45, 46], and Defendants have replied [48]. Having reviewed the parties' submissions, the relevant legal authority, and otherwise being fully advised in the premises, the Court finds the motion is well taken and will be granted for the reasons set forth below.

## I. BACKGROUND

Plaintiff, at all times relevant was a student in the University of Southern Mississippi ("USM") Nurse Anesthesia Program ("NAP") in Hattiesburg, Mississippi. [1] at ¶ 5. Nina McLain served as the Nurse Anesthesia Program Director, and Marjorie Geisz-Everson served as the Associate Nurse Anesthesia Program Director. [42] at p.1. Plaintiff began his studies in the NAP in January of 2016. [42-2] 15:25-16:1.

The first year of the program is didactic, or instructional, rather than clinical. [42-2] 62:4-7. Students then progress into the clinical setting where they are assigned clinical sites and work cases under the supervision of a preceptor, who is either a certified registered nurse anesthetist ("CRNA") or an anesthesiologist. [42-4] 11:15-25. The student will show up and do a case with

the preceptor. [42-4] 19:7-9. The students in performing their cases will hopefully initially get a daily evaluation from their preceptors and then a monthly summary of their performances. [42-4] 19:10-20:8.

Plaintiff began his clinicals in January 2017 and was assigned to three different facilities during his clinical rotation: Forrest General in Hattiesburg (Jan-Mar), Southwest Regional Medical Center in McComb (Apr-June), and the VA Medical Center in Jackson (July-Aug). [42-2] 68:22-69:2. In July 5, 2017 after receiving some unfavorable reviews and a host of other issues arose, Plaintiff was placed on clinical probation and put into a remediation plan. [42-2] at pp. 179-186. He then went into his last rotation at the VA. [42-2] 69:3-8. Defendants contend his performance did not improve, and he eventually became a safety concern. [42-2] at pp. 148, 154, 156, 167. On August 14, 2017, Plaintiff was formally dismissed from the NAP. [1] at ¶ 14; [42-2] at p. 192. Plaintiff appealed the decision and received a final decision affirming his dismissal on January 30, 2018. [1] at ¶ 15.

Plaintiff filed this action on July 30, 2018, contending, *inter alia*, that Defendants discriminated against him on the bases of both race and gender. [1] ¶¶ 17, 18. Defendants have now filed a Motion for Summary Judgment as to all of Plaintiff's claims.

## II. DISCUSSION

### A. Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting

the nonmoving party's case.'" *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

If the moving party meets this burden, the nonmoving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 527 F.3d 134, 138 (5th Cir. 2010) ("An issue is material if its resolution could affect the outcome of the action."). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc*., 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

**B. Analysis**

The Court begins by recognizing that the Plaintiff has abandoned his retaliation claim and all claims against Defendants, Nina McLain and Marjorie Geisz-Everson, in their individual capacities. [46] at p. 5. As such, the Court will analyze the grounds for summary judgment only as to the race discrimination claim under Title VI and the gender discrimination claims under Title VII and Title IX. We start with the Title VII claim.

**1. Title VII Claim**

For a plaintiff to bring an action under Title VII, 42 U.S.C. § 2000e, *et seq.*, the plaintiff must have an employment relationship with the defendant. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) ("Title VII is available only against an employer."). A plain reading of the statute itself makes such requirement clear. *See* 42 U.S.C. § 2000e-2(a) ("Employer practices. It shall be an unlawful employment practice for an employer . . . ." (emphasis added)). Accordingly, to maintain a Title VII action, the plaintiff must be an employee.[1] There is nothing in the record of this case that establishes an employer/employee relationship between Plaintiff and the Defendants. The evidence reveals only that he was a student in USM's nurse anesthesia program in Hattiesburg. Therefore, a remedy under Title VII is not available to Plaintiff, and the Defendants are granted summary judgment as to any such claim.[2] *See Washington*, 2008 WL 2779297 at *6 (denying relief under Title VII to a student who brought a retaliation claim under Title VII against the university for a denial of readmission to a doctoral program).

**2. Title VI and Title IX Claims**

In his Complaint, Plaintiff alleges race discrimination pursuant to Title VI of the Civil Rights Act of 1964 and a gender discrimination claim under Title IX of the Education Amendment Act of 1972, 20 U.S.C. § 1681 *et seq.*[3] It appears both claims are pursued under a disparate

---

[1] As this Court has noted, there are some circumstances where courts have considered graduate research and teaching assistants to be employees for Title VII purposes. *See Washington v. Jackson State Univ.*, No. 3:07-cv-74, 2008 WL 2779297, *6 (S.D. Miss. July 14, 2008). However, in this case, just as in the *Washington* case, there has been no competent record evidence presented that Plaintiff was "working" in either capacity in the USM Nurse Anesthesia Program.

[2] The Complaint [1] is not separated into Counts containing particularly named causes of action. Therefore, this ruling applies generally to any claim alleged under Title VII.

[3] Defendants argue that the Title IX claims should not be allowed because the "Fifth Circuit has plainly stated that causes of action cognizable under both Title VII and Title IX can only be brought under Title VII." [42] at pp. 18-19 (quoting *Prewitt v. Miss. State Univ.*, No. 1:06CV338, 2009 WL 57087, *3 (N.D. Miss. Jan. 7, 2009)). While such is true, both *Prewitt* and the Fifth Circuit case it cites for this proposition, *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), are employment cases. This case is *not* an employment case, and as held in the previous section, Plaintiff does *not* have a cognizable claim under Title VII. Therefore, such legal proposition is inapplicable in this case. On the contrary, Plaintiff may bring a private right of action under Title IX for sex discrimination independent of Title VII. *See Cannon*

treatment theory. [1] ¶ 13. "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964 . . . and passed Title IX with the explicit understanding that it would be interpreted as Title VI was." *Arceneaux v. Assumption Par. Sch. Bd.*, 242 F. Supp. 3d 486, 492 (E.D. La. 2017), aff'd sub nom. *Arceneaux v. Assumption Par. Sch. Bd.*, 725 Fed. App'x 294 (5th Cir. 2018), opinion withdrawn and superseded on denial of reh'g, 733 Fed. App'x 175 (5th Cir. 2018).

To recover damages under Title VI, one must show that the defendant entity engaged in racial discrimination and that the entity receives federal funding. *Washington*, 2008 WL 2779297, *3-4. Similarly, to prevail on a Title IX claim, the entity must have engaged in intentional discrimination based on gender, and the entity must receive federal financial assistance. *See* 20 U.S.C. § 1681; *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993).[4] Under both Title VI and Title IX, there are two ways to prove intentional discrimination, either by direct evidence or circumstantial evidence, and absent direct evidence, the case proceeds under the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green*.[5] *See Washington*, 2008 WL 2779297, *3-4; *Arceneaux*, 242 F. Supp. 3d at 493. "Direct evidence is evidence, which if believed, proves the fact [of intentional discrimination] without inference or presumption . . . and includes any statement or written documents showing a discriminatory motive on its face." *Arceneaux*, 242 F. Supp. 3d at 493 (quoting *Portis v. First Nat'l Bank*, 34 F3d 325, 328 (5th Cir. 1994)). Plaintiff has presented no direct evidence of discrimination in this case, and thus, he must prove his case by inference using the burden shifting framework.

Under this analysis, the plaintiff must first establish a prima facie case of discrimination, which creates the presumption that the defendant unlawfully discriminated against the plaintiff.

---

*v. Univ. of Chicago*, 441 U.S. 677 (1979).
[4] The issue of federal funding has not been addressed and does not affect the outcome of this ruling.
[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). To establish a prima facie case, Plaintiff must demonstrate that (1) he belongs to a protected class; (2) he met the Defendant's qualifications for participation in the activity; (3) he suffered an adverse action; and (4) that similarly situated, non-protected individuals received more favorable treatment under similar circumstances. *See Arceneaux*, 242 F. Supp. 3d at 494; *Washington*, 2008 WL 2772927 at *4. Defendants argue that Plaintiff has failed to establish the second and fourth prongs of a prima facie case. [48] at p. 3. Because the determination of the second prong (whether the Plaintiff was qualified for participation in the program) involves the analysis of a considerable amount of evidence, and because the Court finds that the Plaintiff has failed to meet the fourth prong, analysis of the fourth prong is all that is deemed necessary in this case to determine that summary judgment is warranted.

Assuming for purposes of summary judgment that Plaintiff has established the first three elements of a prima facie case, in order to establish disparate treatment, "a plaintiff must demonstrate that a 'similarly situated [student] under nearly 'identical' circumstances' was treated differently." *Washington*, 2008 WL 2779297 at *4 (citing *Wheeler v. BL Dev't Corp.*, 415 F.3d 399, 406 (5th Cir. 2005)). There is no question that Plaintiff is an African-American male, and thus in a protected class. As such, the question of whether Plaintiff presented a prima facie case of race or gender discrimination turns here on whether any non-African American students or female students are sufficiently identified by Plaintiff as comparators that were similarly situated to him. Defendants contend he has presented no such evidence.

A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by competent summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Ragas v. Tennessee Gas*

6

*Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986)). In response to the summary judgment motion, Plaintiff claims that he was treated differently from two Caucasian female students. [46] at p. 5. In a footnote, Plaintiff complains that "Defendants consistently resisted providing any student information for comparison. However, a text message provided in discovery disclosed the two Caucasian females by first name. To avoid further disclosure, Plaintiff references them as "Student H" and "Student B." [46] at p. 5 n.2. However, Plaintiff fails to submit, or point out if it is in the record, the text message naming these two students.

Plaintiff later asserts that he has "nearly identical comparators in Student B and Student H." [46] at p. 9. Yet Plaintiff fails to provide any competent summary judgment evidence that these two students were even Caucasian or female, much less how these two students were similarly situated to Plaintiff or received more favorable treatment. There is simply no particular evidence regarding these two students at all.[6] Plaintiff spends the lion's share of his response arguing why the Plaintiff should never have been placed on probation in the first place rather than submitting and focusing on the necessary record evidence to establish his prima facie case. "[C]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Washington,* 2008 WL 2779297 at *5 (citing *TIG Ins. Co. v. Sedgwich James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)). Again, there is simply no evidence to establish that Student H and Student B were similarly situated and received favorable treatment, let alone evidence that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986).

---

[6] Although Plaintiff complains that information regarding other students was withheld, the record reveals that Plaintiff never filed a motion to compel such information, which information was key to his case.

In other words, there is simply no basis upon which a fact-finder could infer either race or gender discrimination in this case.

Because Plaintiff has failed to offer any competent, record evidence that there were similarly situated students who were treated more favorably that Plaintiff "under nearly identical circumstances" to establish the fourth element of his prima facie case, Defendants are entitled to summary judgment on Plaintiff's Title VI and Title IX claims.

## III. CONCLUSION

Plaintiff has abandoned all claims other than his Title VII, Title VI, and Title IX claims. Based on the foregoing, Defendants are entitled to summary judgment on all of these remaining claims. Therefore, it is hereby ORDERED that Defendants' Motion for Summary Judgment is granted. There being no remaining claims for adjudication, a final judgment pursuant to Federal Rule of Civil Procedure 58 shall be entered, awarding Defendants their costs in this action.

SO ORDERED AND ADJUDGED this 3rd day of September 2019.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE